**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2341-19

IN THE MATTER OF THE
DENIAL OF HEARING
REQUEST OF THE APPEAL
OF NEW JERSEY POLLUTANT
DISCHARGE SYSTEM
ANNUAL FEE INVOICE

_____

Argued August 17, 2021 – Decided September 8, 2021

Before Judges Gilson and Gummer.

On appeal from the New Jersey Department of Environmental Protection, Docket No. NJ0028436.

George J. Tyler argued the cause for appellant Raritan Township Municipal Utilities Authority (Law Offices of George J. Tyler, PC, attorneys; George J. Tyler, of counsel and on the briefs; James Aversano, III, and Margaret B. Carmeli, on the briefs).

Patrick S. Woolford, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Patrick S. Woolford, on the brief).

PER CURIAM

Raritan Township Municipal Utilities Authority (RT Authority) appeals from a decision by the New Jersey Department of Environmental Protection (DEP) that denied its request for an adjudicatory hearing to contest a fee. The RT Authority separately appealed the DEP's denial of its request to recalculate that fee. We affirm because we have already held that the DEP correctly determined the contested fee. Accordingly, the request for an adjudicatory hearing is moot. Moreover, even if we were to consider the merits, DEP properly denied the request for a hearing.

I.

The DEP regulates the discharge of pollutants to the surface and ground waters of New Jersey under the Water Pollution Control Act (the Act), N.J.S.A. 58:10A-1 to -43. Entities that discharge wastewater are required to have a New Jersey Pollutant Discharge Elimination System (NJPDES) permit. N.J.A.C. 7:14A-2.1(d); N.J.A.C. 7:14A-2.4(a) and (b).

The Act authorizes the DEP to "establish and charge reasonable annual administrative fees, which fees shall be based upon, and shall not exceed, the estimated cost of processing, monitoring and administering the NJPDES permits." N.J.S.A. 58:10A-9. For publicly owned facilities that discharge to surface water, the NJPDES fee is based, in part, on whether the facility is

permitted as a "major" or "minor" facility.  N.J.A.C. 7:14A-3.1 tbl. III.  A major municipal facility is defined as a facility that is designed to handle one million gallons or more of wastewater per day.  N.J.A.C. 7:14A-1.2.  A minor facility is a facility that is not classified as a major facility.  Ibid.

The RT Authority, which is a public entity, operates two wastewater treatment plants:  its Main Plant and the Flemington Wet Weather Facility (WW Facility).  The Main Plant handles most of the wastewater from the RT Authority's service area.  The WW Facility operates during heavy wet weather, when more than 1.35 million gallons per day of wastewater is anticipated to flow to the Main Plant.  When such weather occurs, the RT Authority diverts the excess flow to the WW Facility.  Consequently, the WW Facility discharges wastewater only on certain days, which averages out to about one day per month.

In 2009, DEP issued the most recent NJPDES permit for the WW Facility, which became final in 2010.  The permit designated the WW Facility as a "major" facility because it has the capacity to handle 3.85 million gallons of wastewater per day.  The RT Authority has appealed the final NJPDES permit, and that appeal is pending in the Office of Administrative Law.  The designation of the WW Facility as a major facility, however, is not being challenged in that administrative appeal.  Moreover, the RT Authority is not challenging the permit

3

for the WW Facility in this appeal.  Instead, this appeal concerns the annual fee for the WW Facility.

For at least fifteen years before 2019, the WW Facility was charged annual NJPDES fees as if it were a minor facility.  For fiscal year (FY) 2019, however, the DEP calculated the fee for the WW Facility based on its designation as a major facility.  Consequently, the proposed fee increased by more than 125% and went from a fee of just over $5,500 for FY 2018 to a fee of just over $12,400 for FY 2019.

The proposed FY 2019 NJPDES fee and assessment were included in DEP's annual fee report, issued in April 2019.  That fee report was posted on DEP's website, and notices of the report were mailed to the RT Authority and other permit holders.  The report was then opened to public comment, and DEP held a public hearing on the report on May 1, 2019.  51 N.J.R. 1073(a) (June 17, 2019).  The RT Authority did not submit any objections to or comments on the FY 2019 annual fee report.

On May 10, 2019, DEP sent the RT Authority an invoice for $12,476.78 for the FY 2019 NJPDES fee for the WW Facility.  Three weeks later, on June 4, 2019, the RT Authority requested a recalculation of the fee, pointing out that the WW Facility does not run continuously and runs only during severe wet

weather. The RT Authority also requested an explanation of the fee, noting that the FY 2019 fee had gone up by almost $7,000.

On June 17, 2019, DEP published its final FY 2019 annual fee report and assessment of fees. Ibid. Two weeks later, on July 1, 2019, DEP sent the RT Authority a letter denying its request for a recalculation of the FY 2019 fee. DEP acknowledged that it had previously calculated the fee for the WW Facility as if it were a minor facility. DEP went on to explain that it was correcting that mistake by calculating the FY 2019 fee based on the WW Facility being a major facility.

The RT Authority filed a separate appeal from the DEP's denial of its request to recalculate the FY 2019 fee for the WW Facility. The RT Authority also requested an adjudicatory hearing to challenge the denial of the recalculation. In December 2019, DEP denied the request for a hearing, and the RT Authority filed this appeal from that decision. We denied a request to consolidate those two appeals.

In December 2020, we issued an opinion affirming DEP's denial of the RT Authority's request to recalculate the 2019 fee for the WW Facility. In re Contesting of Invoice for FY 2019 Flemington Wet Weather Facility, No. A-5201-18 (App. Div. Dec. 21, 2020) (slip op. at 11-12) (the Fee Appeal Decision).

We now address RT Authority's appeal from the December 24, 2019 decision by DEP denying its request for an adjudicatory hearing.

## II.

On this appeal, the RT Authority argues that its request to recalculate the FY 2019 fee was a contested case and, therefore, it was entitled to an adjudicatory hearing in the Office of Administrative Law. We reject that argument for two reasons. First, because we have already determined that DEP correctly calculated the FY 2019 fee, the request for an adjudicatory hearing is moot. Second, DEP acted within its authority and discretion in denying the request for an adjudicatory hearing.

## A.

In our Fee Appeal Decision, we reviewed and analyzed the various arguments the RT Authority presented in challenging the fee calculation. In so doing, we were aware of the RT Authority's separate appeal seeking an adjudicatory hearing. Nevertheless, we determined that there were no material issues of disputed facts requiring a hearing. Accordingly, we determined the merits of the fee appeal. Having done so, the request for an adjudicatory hearing is moot. An Administrative Law Judge could not make findings that would overturn our Fee Appeal Decision. In re N.J. Dep't of Env't Prot. Conditional

A-2341-19

Highlands Applicability Determination, 433 N.J. Super. 223, 234 (App. Div. 2013) (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006)) (explaining "[a]n issue is 'moot' when the decision sought in a matter, when rendered, can have no practical effect on the existing controversy").

B.

"The New Jersey Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -24, 'prescribes the procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate.'" In re NJPDES Permit No. NJ0025241, 185 N.J. 474, 481 (2006) (quoting In re Mod. Indus. Waste Serv., Inc., 153 N.J. Super. 232, 237 (App. Div. 1977)). Although the APA establishes the process for an administrative hearing, "[t]he right to an administrative hearing generally must be found outside the APA in another statute or constitutional provision[.]" In re Fanelli, 174 N.J. 165, 172 (2002) (second alteration in original) (quoting Christ Hosp. v. Dep't of Health & Senior Servs., 330 N.J. Super. 55, 61 (App. Div. 2000)).

The RT Authority has no constitutional right to an administrative hearing. See In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 471 (2006). The United States Supreme Court has identified three factors to consider

7

in analyzing the constitutionality of administrative procedures affecting property interests:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
>
> [Mathews v. Eldridge, 424 U.S. 319, 335 (1976); accord In re Freshwater Wetlands, 185 N.J. at 467.]

Application of these factors establishes that RT Authority is not entitled to a hearing to dispute the fee for FY 2019. The interest is the amount of the fee. There is no showing that the amount is incorrect; rather it is based on the WW Facility being a major facility, and no additional procedural safeguards are needed to confirm the undisputed fact that the WW Facility is a major facility. Finally, considering the governmental interests and the process involved, there is no need to require the DEP to provide more procedures to the RT Authority.

The RT Authority also has no statutory right to an administrative hearing. Under N.J.S.A. 58:10A-7(d), "[a] determination to grant, deny, modify, suspend, or revoke a permit shall constitute a contested case . . . [and t]he permittee . . . shall have the opportunity to contest the determination in an

administrative hearing."  By contrast, the Act does not identify a dispute over the amount of a fee as a matter requiring an administrative hearing.  See N.J.S.A. 58:10A-9 (authorizing NJPDES permit fees, but not providing a right to an administrative hearing to contest fee amount).

In matters where neither a statute nor a constitutional provision requires a hearing, the DEP, "in its discretion, shall decide the extent to which, if at all, the request for an adjudicatory hearing shall be granted."  N.J.A.C. 7:14A-17.4.  The regulation enumerates six reasons for the DEP to deny a request for an adjudicatory hearing.  N.J.A.C. 7:14A-17.4(b).  Among those reasons is that "[t]he request does not include genuine issues of material fact or of law which are relevant to the [DEP's] decision."  N.J.A.C. 7:14A-17.4(b)(2).

The RT Authority has not identified any genuine issues of disputed material facts.  Instead, the RT Authority contends that a hearing is necessary to evaluate whether (1) the DEP's decision was arbitrary, capricious, or unreasonable; (2) the doctrine of equitable estoppel applied; and (3) the DEP engaged in de facto rulemaking.  We considered and rejected all these arguments in our Fee Appeal Decision.  See slip op. at 9-12.

The controlling issue on this appeal, as well as on the related fee appeal, is whether the DEP acted arbitrarily, capriciously, or unreasonably in correcting

a mistake and assessing the FY 2019 fee based on the WW Facility being a major facility. That issue does not involve any genuine disputes of material facts. The DEP candidly explained that it had made a mistake. The RT Authority argues that a hearing could explore "the billing history," the DEP's "history of applying its rules to [the WW Facility], and whether there were any changes to the [WW Facility], DEP's rules, or the NJPDES permit." The record establishes that there are no relevant material factual disputes concerning those issues. The billing history is undisputed: the DEP mistakenly billed the WW Facility as a minor facility and then corrected that mistake for FY 2019. There is also no dispute concerning the DEP's history of applying the rules to the WW Facility. The WW Facility has always been permitted as a major facility. The mistake was not in the permit; rather, it was in the annual fee, which had been assessed erroneously as if the WW Facility was a minor facility. Finally, there is no claim that the facility changed or that the rules changed. As already noted, the RT Authority is not claiming that the WW Facility is a minor facility. Accordingly, it is undisputed that the WW Facility is a major facility.

The RT Authority also argues that it is entitled to a hearing as a matter of fundamental fairness and administrative due process. We disagree. When the DEP notified the RT Authority of the FY 2019 fee, the RT Authority requested

10

the DEP to recalculate the fee in accordance with N.J.A.C. 7:14A-3.1(a)(6). The DEP reviewed that request but denied it. In doing so, the DEP explained why it had changed the fee for the WW Facility. The RT Authority then appealed, but we affirmed. Accordingly, the RT Authority was accorded the administrative and appellate process to which it was due. It has no further right to an adjudicatory hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2341-19